

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RODNEY RANDAZZO | CIVIL ACTION |
| VERSUS | NO. 05-108 |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION | SECTION "R" (2) |

## FINDINGS AND RECOMMENDATION

Plaintiff, Rodney Randazzo, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Act. 42 U.S.C. §§ 405(g), 423. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

Despite being ordered to file a memorandum of facts and law, Record Doc. No. 8, and despite having been granted an extension of time to file it, plaintiff filed a Motion to Remand Back to the Administrative Law Judge to Investigate New Evidence four days

after the deadline. Record Doc. No. 13. The court nonetheless has considered plaintiff's untimely motion and has treated it as a memorandum of facts and law. Defendant filed a timely reply memorandum. Record Doc. No. 16.

I.    PROCEDURAL HISTORY

Randazzo filed an application for DIB on November 22, 2002, alleging disability since April 4, 2002 because of a back injury. (Tr. 42, 52). After plaintiff's application was denied, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 11, 2004. On April 27, 2004, the ALJ denied plaintiff's application. (Tr. 14-19). After the Appeals Council denied review on November 12, 2004 (Tr. 4-6), the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.

II.    STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.    The ALJ erred when he failed to find that plaintiff's impairment meets or equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (the "Listings").

B.    The ALJ erroneously relied on the Medical-Vocational Guidelines.

C.    The ALJ failed to accurately rely on the reports of plaintiff's treating physicians and failed to request additional information to eliminate any uncertainties before rejecting the opinions of the treating physicians.

In addition, plaintiff argues that the court should remand the case to the Commissioner so that she may consider new evidence consisting of two medical records dated February 9, 2005, which are described in plaintiff's memorandum but have not been submitted to the court.

III. ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1. Randazzo's hypertension and low back pain with some evidence of L5-S1 radiculopathy are severe impairments.

2. His impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

3. Plaintiff's allegations regarding his limitations are not substantiated to the extent claimed and are credible only to the extent that he suffers from no more than a mild to moderate amount of pain or other symptoms that would not preclude all substantial gainful activity.

4. Randazzo has the residual functional capacity to perform, at most, the full range of light work.

5. He cannot return to his past relevant work as an insulation installer.

6. Plaintiff is a younger individual with a twelfth-grade education and has no transferable skills.

7. Considering plaintiff's residual functional capacity, age, education and past relevant work experience, Medical-Vocational Rule 202.21,

        Table No. 2, Appendix 2, Regulations No. 4, directs a finding of "not disabled."

(Tr. 18-19).

IV. **ANALYSIS**

    A. **Standards of Review**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for DIB, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2004). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§

404.1520, 416.920; <u>Waters</u>, 276 F.3d at 716; <u>Loza</u>, 219 F.3d at 393.[1] The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. <u>Leggett v. Chater</u>, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. <u>Newton</u>, 209 F.3d at 453. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner

---

[1] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. <u>Id.</u> §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. <u>Id.</u> §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. <u>Id.</u> §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. <u>Id.</u> §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. <u>Id.</u> § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." Martinez, 64 F.3d at 174.

B.  Factual Background

Plaintiff testified that he was 35 years old and had graduated from high school but had not attended college. He stated that he had gone through a four-year apprenticeship with the Insulators Local 53 Union and that he had been an insulator for 16 years. He said that he had not worked since April 4, 2002. He stated that he can read, write and perform simple arithmetic and that he has a driver's license. (Tr. 155-57).

Randazzo testified that he was injured while working when he picked up a welding machine and felt a pain like somebody stuck a knife in his back. He said that he tried but was unable to return to work five days later. He stated that he saw a company doctor and then another doctor, who referred him to a neurosurgeon. Plaintiff stated that the neurosurgeon wanted to perform a myelogram but that the worker's compensation administrator denied the myelogram and asked him to get a second opinion. (Tr. 157).

He testified that he had seen a doctor for a second opinion the day before the hearing. He said he had not had any recent nerve conduction tests.

Randazzo stated that his leg is totally numb and is worse than it was immediately after the accident. He said he spends his time alternating sitting and lying on the sofa for short periods, watching television and "go[ing] nuts." He testified that he cannot stand or sit for any length of time and that lying down is the only thing that gives him relief.

Plaintiff testified that the pain in his lower back has worsened since April 2002 and has moved into his leg. He said his leg and toes often get numb when he sits and that sometimes he almost falls when he stands up because his leg gives out. He stated that he sometimes feels a stabbing pain in his lower back when he stands up. (Tr. 158).

Randazzo said that both of his treating physicians, orthopedic surgeon Ralph J. Gessner, M.D. and neurosurgeon Bryant G. George, M.D., have found him to be totally disabled. He stated that no doctor has ever told him that he was able to go back to work temporarily. He testified that he receives worker's compensation benefits for his back, but he has lost his health insurance.

Plaintiff stated that the numbness in his leg has worsened since he was examined by orthopedic surgeon Frederick L. Keppel, M.D., in July 2003. (Tr. 159). He said he used to have a shooting pain in his leg every now and then, but that now his leg stays

numb. He testified that Dr. George is trying to have a myelogram done to pinpoint the problem and then perhaps surgery can be done. He stated that he received an epidural injection about a year before the hearing, but that it made him worse and he was in excruciating pain for two and one-half weeks after that.

Randazzo testified that he used to do some commercial fishing and carpentry work on the side, but he cannot do those any more. He said he takes medications for pain and muscle spasms. He stated that Dr. Gessner recently prescribed Xanax for his "nerves," which he only takes when he needs it, which is not every day. He said he has no side effects from his medications. (Tr. 160). Plaintiff stated that his medications relieve his pain somewhat, but he intends to talk to his doctor about changing his pain medication because it no longer works as well as it used to do. (Tr. 161).

C.   Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 15-16). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections, and highlights noted below.

D.  Plaintiff's Appeal

1.  *Plaintiff's New Evidence Does Not Require a Remand*

Plaintiff has referred in his memorandum to new medical evidence that is not in the administrative record or the court's record. According to Randazzo's memorandum, the new evidence consists of two reports of a lumbar myelogram and a CAT scan of plaintiff's lumbar spine, both dated February 9, 2005 and both by Dr. George, plaintiff's treating neurosurgeon. Randazzo states that the myelogram "indicated a small anterior extradural defect at L5-S1 which Dr. George stated suggested compression on the space by the L5-S1 disc, especially since there was a moderate annulomeningeal interval at this level." In addition, plaintiff states that "Dr. George found there to be minimal hypertrophic changes involving the L3-4 through L5-S1 facet joints, and soft tissue distal component at L5-S1 protruding and extruding paracentrally to the right." Record Doc. No. 13, at pp. 6-7. Plaintiff asks that the court remand the case so that the Commissioner may consider the new evidence. Defendant opposes plaintiff's request.

The Appeals Council denied review of the ALJ's decision on November 12, 2004, three months <u>before</u> the date of the new evidence. This case therefore does <u>not</u> fall within the Fifth Circuit's recent ruling that new evidence submitted to the Appeals Council is part

of the record and of the Commissioner's final decision, which is reviewed by the district court. Higginbotham v. Barnhart, 405 F.3d 332, 334 (5th Cir. 2005).

This court may not issue factual findings on new medical evidence and may review such evidence only to determine if a remand is appropriate. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995). Accordingly, the court must determine whether this case should be remanded so the Commissioner may consider this new evidence.

The court may only remand for consideration of new evidence upon a showing that the evidence is new and material <u>and</u> that good cause exists for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Leggett, 67 F.3d at 567. "In addition, the new evidence must also pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling." Id.

"New evidence may be grounds for remand if it is material; this materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied, <u>and</u> whether there is a reasonable probability that the new evidence would change the outcome of the Commissioner's decision." Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003) (emphasis added).

A medical examination conducted after the ALJ's decision "alone is not sufficient to warrant a remand." Leggett, 67 F.3d at 567. As to the new medical records in this case, which post-date the ALJ's decision by more than nine months, Randazzo argues that they are important and relevant to his disability. This is not the legal standard for a remand.

Here, as in Leggett, plaintiff "does not provide a satisfactory explanation for [the records'] absence from the initial proceedings. The evidence consists of a new examination taken far outside of the period in which [plaintiff] applied for or was denied benefits. [Plaintiff] offers no evidence that his current . . . disability did not subsequently develop after his initial application or that it is not the result of the deterioration of a condition that was not previously disabling." Id.

Furthermore, Randazzo has not demonstrated a reasonable probability that the new evidence from February 2005 would change the outcome of the Commissioner's decision, which applies only to the period of April 4, 2002 through April 27, 2004. At most, the new evidence may indicate that plaintiff's back condition has deteriorated since the ALJ's decision. Medical records and testimony concerning plaintiff's complaints of back pain were already in the record, including two MRI reports and an EMG study, which revealed mild dehydration, minimal disc bulging and chronic lumbosacral radiculopathy at the L5-

S1 level. The ALJ specifically considered that evidence in concluding that plaintiff's severe impairments included low back pain with some evidence of L5-S1 radiculopathy. Two examining physicians had access to those reports. Dr. Keppel opined on July 25, 2003 that Randazzo could engage in "at least sedentary, light work and perhaps medium work." (Tr. 122). Consultative examiner Donald C. Faust, M.D., an orthopedic surgeon, stated on March 10, 2004 that he would release plaintiff to "regular duties." (Tr. 151). Thus, there is no reasonable probability that these new records would have changed the ALJ's opinion that plaintiff was not disabled, even if Randazzo could establish good cause for his failure to include this evidence in the administrative record.

Accordingly, plaintiff has failed to carry his burden to show that a remand is required for consideration of his new evidence.

> 2. *The ALJ did not err when he failed to find that plaintiff's impairment meets or equals one of the Listings.*

The ALJ found at the second step of the sequential evaluation that Randazzo has severe impairments, consisting of hypertension and low back pain with some evidence of L5-S1 radiculopathy. The ALJ specifically considered Listing 1.00 for impairments of the musculoskeletal system and decided that plaintiff did not meet that listing.

Although plaintiff has assigned as error the ALJ's failure to find that his impairment meets or equals a listing, he fails to mention any specific listing or cite to any

medical evidence that would support a disability determination under any listing. The claimant has the burden of proof to show that he meets or equals a listing. Newton, 209 F.3d at 453. Randazzo has failed to show how the ALJ erred in concluding that his impairments do not meet or equal any listing.

> 3. *The ALJ did not err by relying on the Medical-Vocational Guidelines.*

Under this assignment of error, plaintiff argues vaguely that the evidence does not support the ALJ's decision. Randazzo does not address why or in what manner the Medical-Vocational Guidelines should not apply.

At the fifth step of the sequential evaluation, after finding that plaintiff has the residual functional capacity to perform the full range of light work but could not return to his past relevant work, the ALJ noted that Randazzo is a younger individual with a high school education and no transferable skills. Therefore, the ALJ held that Medical-Vocational Rule 202.21, Table No. 2, Appendix 2, directs a finding of "not disabled." This is a correct application of the Rule based on the facts that the ALJ found.

>   4.  *The ALJ did not err by failing to accurately rely on the reports of plaintiff's treating physicians and failing to request additional information to eliminate any uncertainties before rejecting the opinions of the treating physicians.*

Randazzo argues that, because the medical history was incomplete, the ALJ erred by failing to request a clarification of the treating physicians' reports. Plaintiff bears the burden of proving his disability with sufficient medical evidence. Leggett, 67 F.3d at 566; Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991). If he is unable to provide sufficient medical evidence, the ALJ may make a decision based on the information available. Id. Randazzo does not explain how the medical history is incomplete or what other medical evidence should have been in the record. Contrary to his vague argument, the record appears to be complete. It consists of test results and medical records from all of plaintiff's treating physicians and two independent examiners dated from August 29, 2001 through March 10, 2004.

Moreover, re-contacting treating physicians is required only if the evidence in the record is inadequate to determine whether the claimant is disabled. 20 C.F.R. § 404.1512(e). The record in the instant case was adequate to make that determination.

Ultimately, even if the ALJ erred by failing to follow the regulations, reversal "is appropriate only if the applicant shows prejudice from the ALJ's failure to request additional information." Newton, 209 F.3d at 458 (citation omitted). Randazzo has not

15

shown that recontacting any of his physicians would have produced additional evidence or that such additional evidence would have led to a different conclusion. Id.

Randazzo next argues that the ALJ erroneously gave little weight to the medical opinions of his treating physicians. Although he does not cite any specific opinions of his doctors in his memorandum, he is presumably referring to the statement by Dr. George in a letter to the Louisiana Workers' Compensation Corporation on January 29, 2004 that plaintiff is "totally temporarily disabled" (Tr. 147) and the statement by Dr. Gessner in a "to whom it may concern" letter on February 17, 2004 that "this patient has been disabled since I first saw him, from any type of gainful employment." (Tr. 149). The ALJ gave little weight to these statements. He found them unsupported by the evidence and vague because they were not supported by specific limitations or the remainder of the evidence. (Tr. 17).

It is well established that a physician's statement that a patient is disabled does not mean that the patient is disabled for purposes of the Act, because that is a determination that may be made only by the Commissioner. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001).

> [S]ome opinions by physicians are not medical opinions, and as such have no "special significance" in the ALJ's determination. Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work." These determinations are

> legal conclusions that the regulation describes as "reserved to the Commissioner." . . . The doctor's opinion [that plaintiff could not work] was not a medical opinion within the meaning of the regulation.

Frank, 326 F.3d at 620 (quoting 20 C.F.R. § 404.1527(e), (1) & (e)(3)). Accordingly, the ALJ was not bound to accept the opinions of Drs. Gessner and George concerning plaintiff's disability status.

Although the opinion of a treating physician who is familiar with the claimant's impairments should be accorded great weight, a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. Newton, 209 F.3d at 455.

Ultimately, the ALJ has sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. "The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." Id. at 455-56 (citations omitted).

In this case, substantial evidence supports the ALJ's decision to discredit the conclusory opinions of plaintiff's doctors concerning his ability to work. It is the province

17

of the ALJ to resolve conflicts in the evidence. Id. at 452. The opinions of Drs. Faust and Keppel, the functional capacity evaluation performed on March 11 and 12, 2003 (Tr. 83-85), and the ongoing treatment notes of Drs. Gessner and George, all of which are adequately summarized in the ALJ's opinion, constitute substantial, conflicting evidence that Randazzo can perform light work.

As he is clearly entitled to do, the ALJ in this case weighed conflicting medical opinions and resolved the conflict in favor of rejecting the conclusory restrictions by Drs. Gessner and George and accepting the limitations to light work suggested by Drs. Faust, Keppel and the occupational therapist who performed the functional capacity evaluation. Newton, 209 F.3d at 452; Moore, 919 F.2d at 905.

## CONCLUSION

Plaintiff has failed to carry his burden to show that the new evidence mentioned in his memorandum requires a remand. The ALJ did not err by relying on the Medical-Vocational Guidelines, failing to request clarification of the treating physicians' opinions or failing to accord adequate weight to the opinions of plaintiff's treating physicians. Substantial evidence in the record supports the ALJ's findings.

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 14th day of November, 2005.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE