FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR 13  PM 11: 30

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RODNEY RANDAZZO

VERSUS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY

CIVIL ACTION

NO: 05-108

SECTION "R" (2)

## ORDER AND REASONS

Plaintiff Rodney Randazzo objects to the Magistrate Judge's Findings and Recommendation that his claims be dismissed with prejudice.  Having considered the record, the Magistrate's Findings and Recommendation, plaintiff's objections thereto, and the applicable law, the Court concludes that plaintiff's objections are without merit.  For the following reasons, the Court rejects plaintiff's objections and adopts the Magistrate's Report and Recommendation as its opinion in this matter.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On April 4, 2002, plaintiff Rodney Randazzo injured his back trying to pick up a welding machine while working as an insulation installer.  This was his last day of work.  On January 14, 2003, Randazzo filed an application for Social Security

___ Fee
___ Process
X  Dktd
___ CtRmDep
___ Doc. No.

disability benefits.  Randazzo's application was denied on March 3, 2003.  On May 6, 2003, Randazzo requested a hearing before an administrative law judge.  An ALJ held a hearing on March 11, 2004, at which Randazzo was represented by counsel.  The ALJ relied on medical records and reports from six doctors, including two treating physicians, who had examined Randazzo since his accident, and a Functional Capacity Evaluation (FCE) prepared by an occupational therapist.

Randazzo first saw Dr. Ralph Gessner, one of his treating physicians, on April 26, 2002.  Dr. Gessner noted that an MRI revealed some degenerative changes at the L5-S1 interval, that Randazzo experienced muscular spasming in his lower back, that his mobility was "markedly limited," and that he had "lumbar strain which is considerable."  (*Id.* at 106 & 109).  Randazzo continued to see Dr. Gessner through at least February 2004.  (*Id.* at 149).  Dr. Gessner's notes generally describe the course of Randazzo's treatment with no references to specific occupational limitations.  On June 25, 2002, Dr. Gessner noted "[k]eep him off work."  (*Id.* at 105).  On August 23, 2002, Dr. Gessner noted that "I would like to see another MRI because [Randazzo is] a very gainful individual and we'll try to get him back to work as soon as possible."  (*Id.* at 104).  On September 24, 2002, Dr. Gessner noted that Randazzo "is unable to return to

any kind of work." (*Id.*). On February 11, 2003, Dr. Gessner noted that "I can't put him back to work because of the pain in his lower back with radiation to the right leg. This has been complicated by his blood pressure. . . . I'd like to get an FCE so we can more accurately describe his functional ability to return to work. Right now I can't let him go back to work until his back problems have been treated properly." (*Id.* at 103). On April 11, 2003, Dr. Gessner noted that Randazzo "works with insullation [sic] and does climbing, bending, stooping, kneeling, crawling and lifting. He can't do that and so I have him disabled." (*Id.* at 102). Randazzo also submitted a letter dated February 17, 2004, from Dr. Gessner to the ALJ; the letter states, "I feel this patient has been disabled since I first saw him, from any type of gainful employment." (*Id.* at 149).

On August 21, 2002, approximately four and a half months after his injury, Randazzo saw Dr. Donald Faust, who found that he was able to "heel and toe walk well," with normal knee and ankle reflexes, pulses, and toe flexion and extension. (*Id.* at 92). Dr. Faust also examined Randazzo's MRI done on April 17, 2002, which showed disc dessication and minimal posterior bulging at the L5-S1 interval; Dr. Faust believed the MRI was normal for a person of Randazzo's age, height, and weight. (*Id.*). Dr. Faust recommended that Randazzo go back to light duties, and he

believed that after some period of time Randazzo could resume full duties. (*Id.*).

On March 11 and 12, 2003, Randazzo underwent a Functional Capacity Evaluation (FCE) and a Musculoskeletal Evaluation under the supervision of Claire Herbert-Green, an occupational therapist. (*Id.* at 140-44). She found that his "physical abilities match the criteria for a light level of work on a full-time basis with the following restrictions: 1) avoidance of repetitive or sustained crouching, 2) avoidance of lifting below waist levels, 3) sitting, standing and walking should be alternating and self-paced." (*Id.* at 140). Herbert-Green also concluded that Randazzo could tolerate occasional lifting of 20 pounds from his waist to his shoulders and occasional carrying of 20 pounds, but was unable to lift anything from the floor to his waist. (*Id.* at 142).

On June 2, 2003, upon a reference from Dr. Gessner, Randazzo first saw Dr. Bryant George, his second treating physician. (*Id.* at 133). Dr. George noted that his "gait and station were normal" and that his earlier MRI showed some disc degeneration but "was otherwise within the limits of normal." (*Id.*). Dr. George ordered a second MRI. (*Id.* at 134). On June 25, 2003, Randazzo received a second MRI, which revealed a mild degree of disc dehydration and a couple of millimeters of posterior disc

bulging.  (*Id.* at 131).  The examining physician, Dr. Denny Taylor, compared this MRI with the MRI of April 17, 2002, and reported that there were no new or adverse findings.  (*Id.*).  Dr. Taylor also reported that the amount of disc bulging was "probably normal at this level."  (*Id.*).  On January 29, 2004, Dr. George again examined Randazzo.  Without making any specific remarks about his mobility or occupational capabilities, he concluded that his disability status was "totally temporarily disabled."  (*Id.* at 147).

On July 21, 2003, Randazzo saw Dr. Salvador Murra who performed a nerve conduction study.  (*Id.* at 128-29).  Dr. Murra concluded that "[s]ensory and motor studies are within normal limits."  (*Id.* at 128).

On July 25, 2003, Randazzo saw Dr. Frederick Keppel, who performed a physical examination and reviewed Randazzo's MRI and x-ray results.  (*Id.* at 121).  Dr. Keppel noted that Randazzo "ambulates with a normal gait" and "was able to toe walk and heel walk."  (*Id.*).  He found that sitting, standing, walking, pushing, and pulling were not affected by Randazzo's impairment, that Randazzo could occasionally lift a maximum of fifty pounds, and that he had no postural or manipulative limitations.  (*Id.* at 123-25).  Dr. Keppel concluded that Randazzo "should be able to perform at least sedentary, light and perhaps medium work

activities.   Heavy lifting, excessive stooping, climbing or bending could aggravate his lower back condition."   (*Id.* at 122).

On March 10, 2004, the day before Randazzo's hearing, Dr. Faust again examined Randazzo and noted that he was "able to touch his toes when showing me his foot."   (*Id.* at 151).   Though he found that Randazzo "continues with difficulties" and "shows evidence of symptom magnification and has inconsistencies on his examination," Dr. Faust believed that Randazzo was not a candidate for surgical intervention and "would release him to regular duties."   (*Id.*).

On April 27, 2004, the ALJ ruled that Randazzo was not disabled under the terms of the Social Security Act. Specifically, the ALJ found: 1) that Randazzo was not engaged in any substantial gainful activity; 2) that Randazzo's impairment was severe; 3) that Randazzo's impairment did not meet the Listing of Impairments in Appendix 1 of the regulations; 4) that Randazzo was precluded by his impairment from performing past relevant work as an insulation installer; and 5) that Randazzo could perform a significant number of jobs in the regional or national economy.   (*Id.* at 18-19).

Randazzo sought judicial review of the ALJ's decision in this Court, and the matter was referred to a Magistrate Judge, who entered a Findings and Recommendation on November 14, 2005,

6

recommending that Randazzo's complaint be dismissed with prejudice.  Randazzo requests that the Court reject the Magistrate's Findings and Recommendation.  Before the Magistrate, Randazzo argued: 1) that the ALJ erred when he failed to find that Randazzo's impairment meets or equals one of the listed impairments in Appendix 1; 2) that the ALJ erroneously relied on the Medical-Vocational Guidelines; 3) that the ALJ failed to accurately rely on the reports of Randazzo's treating physicians; 4) that the ALJ failed to request additional information to eliminate any uncertainties before rejecting the opinions of the treating physicians; and 5) that the Magistrate should remand the case to the Commissioner of Social Security so she might consider new evidence.  The Magistrate considered and rejected these arguments.  In his objections to the Magistrate's Findings and Recommendation, Randazzo raises the same issues.  For the following reasons, the Court finds that the Magistrate adequately and properly addressed the issues Randazzo raises in his opposition.

## II.   LEGAL STANDARD

This Court reviews the Findings and Recommendation of the Magistrate Judge de novo.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The function of this Court on judicial review

under 42 U.S.C. 405(g) is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision, and whether the Commissioner applied the appropriate legal standards in reaching the decision. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *see also Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The Commissioner's final decision must be upheld if it is supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, less than a preponderance, and such that a reasonable mind might accept a conclusion based thereon. *See Spellman*, 1 F.3d at 360. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Johnson v. Bowen*, 864 F .2d 340, 343-44 (5th Cir. 1988). The Court may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner. *See Masterson*, 309 F.3d at 272; *Spellman*, 1 F.3d at 360; *Martinez*, 64 F.3d at 173. Conflicts in evidence are for the Commissioner to resolve, not the courts. *Masterson*, 309 F.3d at 272. Findings by the Commissioner that are supported by substantial evidence are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173.

The ALJ uses a five-step sequential process to evaluate

claims of disability, deciding whether: 1) the claimant is not working in substantial gainful activity; 2) the claimant has a severe impairment; 3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; 4) the impairment prevents the claimant from doing past relevant work; and 5) the impairment prevents the claimant from doing any other work.   20 C.F.R. § 404.1520.

The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step.   Thus, the claimant must show first that he is no longer capable of performing his past relevant work due to a severe impairment.   20 C.F.R. § 404.1520(e).   If the claimant satisfies this burden, then the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy.   *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).   Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding.   *Id.*

## III. DISCUSSION

### A.   Randazzo's First Objection

Randazzo asserts that the ALJ erred in finding that his impairment, though severe, did not meet any impairment included in the Listing of Impairments.   Randazzo bears the burden of

9

demonstrating that an "impairment meets or equals an impairment enumerated in the listing of impairments in the appendix of the regulations." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (citing 20 C.F.R. § 404.1520(d) (1990)). Plaintiff must prove that the "medical findings support each of the criteria for the equivalent impairment condition" in order for an impairment to meet or equal a listed impairment. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (*citing Sullivan v. Zebley*, 493 U.S. 521 (1990); 20 C.F.R. § 404.1526(a)). A diagnosis of an impairment does not establish that the impairment meets or equals a listing. 20 C.F.R. § 416.925(d).

In support of his finding that Randazzo's impairment did not meet any of the listed impairments, the ALJ stated that he gave particular attention to section 1.00 (Musculoskeletal system), which states in part that "[r]egardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason . . . or the inability to perform fine and gross movements effectively on a sustained basis for any reason." 20 C.F.R. § 404, Subpt. P, App. 1(A)(1)(B)(2)(a). Randazzo does not state which listing his impairments meet, nor does he claim to meet either of the above criteria for functional loss; he instead rests on his assertion that the ALJ's decision

"did not coincide with the medical evidence in the record." Because he does not articulate how the medical findings in the record meet the relevant criteria, he fails to meet his burden of demonstrating that his medical condition meets an enumerated impairment.

## B.   Randazzo's Second Objection

Randazzo objects to the ALJ's use of the Medical-Vocational Rules in determining that he was not disabled.   The ALJ found that "Medical-Vocational Rule 202.21, Table No.2, Appendix 2, Subpart P, Regulations No.4 directs a finding that [a person with Randazzo's symptoms] is 'not disabled' within the meaning of the Act."   (R. Doc. 6 at 18).   Reviewing the Table, the row cited directs a finding of "Not Disabled" when the applicant is a younger individual (age 18-49) with a high school education or more who has no transferrable skills and is confined to light work as a result of a severe impairment.   20 C.F.R. § 404, Subpt. P, App. 2 § 202.21.   The ALJ found that because Randazzo is a 35-year-old high school graduate who is precluded by his disability from continuing to work as an insulation installer and whose disability limits him to the full range of light and sedentary work, he meets this definition.   (R. Doc. 6 at 18).   Setting aside Randazzo's objection to the finding that he was capable of light or sedentary work (discussed below), the Court does not

find that the regulations were incorrectly applied.

## C.   Randazzo's Third Objection

Randazzo challenges the ALJ's decision to assign very little weight to the statements of Dr. George and Dr. Gessner in finding that Randazzo is capable of light and sedentary work.   The ALJ assigned Dr. Gessner's statement that Randazzo was disabled "from any type of gainful employment" little weight because he concluded it was an "opinion as to the ultimate issue reserved to the Commissioner" and it contained no specific limitations on Randazzo's capacity for work.   (R. Doc. 6 at 17).   The ALJ assigned little weight to Dr. George's statement that Randazzo was "totally, temporarily disabled" because that conclusion was both unsupported by the evidence and "essentially vague" because it contained no specific limitations.   (*Id.*).

The ALJ assigned great weight to the opinions from Dr. Faust and Dr. Keppel, both of whom concluded that Randazzo was capable of light work.   (*Id.*).   The ALJ found that the evidence supported their opinions.   (*Id.*).   He assigned no weight to the FCE, since it was not conducted by a medical professional.   (*Id.*).

The opinion of the treating physician, who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.   *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala,*

38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)). However, good cause may permit an ALJ to discount the weight of a treating physician relative to other experts when the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton*, 209 F.3d at 456.

Here, the treating physicians, Dr. Gessner and Dr. George, stated conclusorily that plaintiff was disabled without documenting his physical abilities relative to the criteria in the regulations, specifically his ability to walk, sit, and carry weight. By contrast, Dr. Faust and Dr. Keppel reached their determinations by looking at plaintiff's ambulatory ability and capacity for carrying weight. Because the ALJ is granted the power to resolve conflicts in the evidence, the Court will not overturn his decision when, as here, it is supported by substantial evidence. Consequently, the Court finds the ALJ did not err in determining that, under the applicable regulations,

Randazzo's symptoms required a finding that he was not disabled.

### D.    Randazzo's Fourth Objection

Randazzo argues that the ALJ should have acted to fill gaps in the administrative record.  He asserts that the ALJ had doubts about his disability, but he did not act to clear up those doubts by requesting further information from the treating physicians. The ALJ has a duty to develop the facts fully and fairly when evaluating an applicant's claim for disability benefits.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  If the ALJ does not satisfy his duty, his decision is not substantially justified. *Id.*  Reversal of his decision, however, is appropriate only if the applicant shows that he was prejudiced by the ALJ's failure to develop the record.  *Id.*  Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Id.*

Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing.  *Id.*  The absence of such a statement, however, does not, in itself, make the record incomplete.  *Id.*  In a situation such as the present one, where no medical statement has been provided, the Court's inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record.  *Id.*  As discussed above, there is substantial

evidence in the record to support the ALJ's determination that Randazzo is capable of light or sedentary work.

Randazzo does not offer any specifics as to what the ALJ might have requested or what the treating physicians would have provided to help him with his decision beyond the medical records and conclusions described above. To the extent that he is arguing that the ALJ had a duty to request more evidence in order to resolve conflicts in the evidentiary record, this argument misunderstands the role of the ALJ in making a disability determination. The ALJ's role is to resolve conflicts in evidence, not treat conflicts as an indicator that more evidence is needed. The Court concludes that the ALJ did not err by not asking for more information from the treating physicians.

### E.   Randazzo's Fifth Objection

Randazzo argues that the case should be remanded to the ALJ so that he may consider evidence that was not available at the time of the determination. Randazzo points to two reports from Dr. George, both dated February 9, 2005, that examine, respectively, a lumbar myelogram and a CAT scan performed on Randazzo.

In order to warrant a remand, the evidence submitted by Randazzo must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in the prior proceeding. *See Leggett*, 67 F.3d at 567;

15

*Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987). The Court finds that the proffered supplemental evidence is new. The Court finds, however, that Randazzo has not satisfied the materiality requirement. In order to be material, the evidence must pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling. *Leggett*, 67 F.3d at 567; *Bradley*, 809 F.2d at 1058. The contested time period here is April 4, 2002, through March 11, 2004, the time period for which the ALJ determined that plaintiff was not disabled. Both reports post-date the ALJ's decision. Randazzo offers no evidence that the reports do not merely describe a deterioration of the same back problems that were previously found not to be disabling. *See Leggett*, 67 F.3d at 567. Randazzo does not explain how this new evidence might lead to a different determination about the extent of his injury in April 2004, especially since the tests apparently show only minimal changes to his vertebral joints and an already-diagnosed soft tissue protrusion at the L5-S1 joint. The Court finds that this new evidence is not sufficiently material to merit remand.

## IV.   CONCLUSION

For the foregoing reasons, the Court REJECTS plaintiff's objections, APPROVES and ADOPTS the Magistrate Judge's Report and

Recommendation, and DISMISSES plaintiff's claims with prejudice.

New Orleans, Louisiana this 13ᵗʰ day of March, 2006.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE